## COMMONWEALTH vs. JOSEPH DOCKHAM.

Norfolk. May 3, 1989. — August 21, 1989.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Confrontation of witnesses. *Child Abuse. Rape. Inde-*
*cent Assault and Battery. Witness*, Child, Competency, Credibility, Im-
peachment, Expert. *Evidence*, Videotape, Expert opinion, Sexual con-
duct, Fresh complaint, Reputation, Credibility of witness. *Practice,*
*Criminal*, Appeal.

At the trial of several indictments arising from the sexual abuse of a four year
    old boy and an eighteen month old girl, there was sufficient evidence
    to warrant the judge's finding that the behavior exhibited by the boy in
    the courtroom, contrasted with his appearance and behavior in the judge's
    lobby, established beyond a reasonable doubt that it was necessary to
    record the boy's testimony outside the courtroom in order to prevent the
    boy from suffering psychological or emotional trauma, despite the lack
    of expert testimony on the issue of emotional trauma to the boy if he
    testified in open court. [622-625]
At the trial of several indictments arising from the sexual abuse of a four year
    old boy and an eighteen month old girl, the judge, within his discretion,
    properly admitted the testimony of three witnesses as evidence of fresh
    complaint and gave appropriate limiting instructions. [625-627]
At the trial of several indictments arising from the sexual abuse of a four year
    old boy and an eighteen month old girl, a child psychiatrist's expert
    testimony about the general behavioral characteristics of sexually abused
    children was admissible within the judge's sound discretion and was
    properly limited by the judge's instructions to the jury. [627-630]
At the trial of several indictments arising from the sexual abuse of a four year
    old boy and an eighteen month old girl, the judge properly excluded
    from evidence the statement of the boy witness's first foster mother that
    the boy "lies a lot," which was offered as evidence of general reputation
    and character. [630-631]

INDICTMENTS found and returned in the Superior Court De-
partment on December 10, 1986.

The cases were tried before *William H. Carey*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stephen T. Cunningham* for the defendant.

*Stephanie Martin Glennon*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant, Joseph Dockham, was convicted of several indictments charging rape, assault with intent to rape, child pornography, and indecent assault and battery of two minor children. The defendant appeals from his convictions, as well as the denial of his motion for a new trial. We transferred the case to this court on our own motion.

The defendant was tried together with the codefendant, Laura Tufts, for the sexual abuse of a four year old boy and an eighteen month old girl. The defendant is the father of the eighteen month old girl; the codefendant is the mother of both children. We have already addressed the codefendant's appeal from the denial of her motion for a new trial. *Commonwealth v. Tufts, ante* 610 (1989).

We summarize the evidence before the jury. The four year old boy gave videotaped testimony about the alleged sexual abuse.[1] He testified that the defendant tried to put his penis into the boy's rectum and that there was some penetration. According to the child witness, the defendant touched the boy's buttocks and penis with his hand. He also sodomized the boy. The boy testified that "stuff came out." The boy testified to further acts of sexual abuse by the defendant. Additionally, the boy testified that the defendant also touched the girl's vagina with his mouth, and that the codefendant touched his penis with her mouth and fingers and touched the girl's vagina with her mouth and fingers. Both defendants told the boy that he had to touch the codefendant's vagina with his mouth and made the boy touch his sister's vagina. The boy testified that the defendant bit him on the buttocks, that he was hit by the defendant with belts, and that the defendants took pictures while the sexual abuse occurred.

---

[1] Other facts relevant to the boy's videotaped testimony are presented in *Commonwealth v. Tufts, supra.*

A social worker from the Department of Social Services (department) testified at trial that she had removed the two children from the defendants' home on June 16, 1986, after the four year old boy made allegations of physical and sexual abuse by the defendant and the codefendant. On June 27, 1986, the department placed the two children with a foster family with which the children remained until the time of trial.

The boy's foster mother testified at trial that, on the day the children arrived at her home, the boy told her that his dad had put his finger in the boy's "bum." The foster mother further testified that when it was time for the children to take a bath, the boy started screaming, crying, grabbing at his genital area, and appeared fearful. The child slept in his clothes that night because he would not take off his clothes.

The next day, the boy told his foster mother that "daddy Joe" had touched his penis, and that he was afraid to tell because he would have to go home and would be hit. That night at bath time, the boy began trembling; his eyes popped open, his body and face were rigid, and he was grabbing his genital area. Later, when he calmed down a bit and undressed himself, his foster mother noticed that he was wearing several layers of underpants. The foster mother testified that the boy made further extensive and detailed disclosures to her over the next few days. Her recount of his disclosures was admitted at trial as fresh complaint testimony.

On the fourth day the children were with their foster mother, she took them to the emergency room at Children's Hospital. The boy met with child psychiatrist Dr. Luis Rodriguez. Dr. Rodriguez testified, under the fresh complaint doctrine, that the boy reported that "Joe" had played with his genital area, and put his penis in the boy's rectal area, and that "mommy" (Tufts) played with him and took pictures.

Dr. Kimberly Davies testified that she examined the children at the hospital and made no unusual findings at that time. The girl had a normal gynecological examination showing no tears, bruises, or trauma. The boy would not take off his pants. When the nurse and the physician tried to take his pants off, he started screaming, kicking, fighting, and trying to get off the table.

The child's foster mother described him as having veins bulging out of his face, as being "beet red," screaming, "Stop, stop, stop. Leave me alone." Dr. Davies did not complete the examination.

A social worker with the department subsequently interviewed the boy as part of an investigation. Her conversation with him was admitted at trial as fresh complaint testimony. The boy told her that his "daddy" had hurt him and that he had put his penis in the child's mouth. Later that day, the boy told the social worker that he wanted to tell her about his "mommy," saying that his mother had touched his penis with her hands and mouth, that she made the child touch his sister, and that the codefendants took pictures with a camera.

Dr. Reneé Brant, a child psychiatrist, testified as an expert witness. She described the language and communication skills of a child as he or she progresses from infancy to age six, as well as the commonly recognized clinical phenomena related to child sexual abuse — secrecy, delayed or gradual disclosure, retraction — and behavioral signs and symptoms sexually abused children frequently exhibit. Dr. Jan Paradise, a pediatric gynecologist, also testified as an expert witness. She testified, in response to a hypothetical question, that it was not inconsistent for a sixteen month old girl who had been touched in the genital area by an adult's mouth or fingers two weeks prior to a physical examination not to have physical signs of trauma to her genital area. She also testified that it was not inconsistent for a four year old boy to show no injury or physical trauma after having had an adult penis placed in his rectal opening, or an adult penis inserted into his mouth, or having had his penis touched by an adult's hands.

Both defendants testified in their own defense. The defendant Dockham testified that he once hit the boy on the buttocks with a belt because he thought the boy had broken a window, that he bit the boy's buttocks as a form of play, and that he once touched the boy's penis when he was drying him off after a bath. He denied inserting his penis into the boy's mouth or engaging in any sexual activity with the boy or girl.

The codefendant, Laura Tufts, testified that she hit the boy "on the butt" if he disobeyed her, but not with a belt. She denied putting her mouth on the boy's penis, or doing anything of that nature. She testified that she occasionally did "raspberries" on the boy's and girl's bellies, which made the children giggle. She also said she would bite the boy on the buttocks when playing with him. She admitted that she at one time owned a Polaroid camera but said that it had been lost in a fire. She testified that she had to touch the boy's penis to keep it clean and to apply ointment he needed because of a problem with the foreskin of his penis. Dr. John J. McHugh, the boy's pediatrician, also testified for the defense, that the boy had a problem with the foreskin of his penis which required the application of lubricants.

The defendant raises eight issues on appeal: (1) the violation of his confrontation right because of impaired eye contact between the defendant and child witness during videotaping; (2) the quality of the videotape; (3) the lack of expert testimony on the issue of emotional trauma to the child if he testified in open court; (4) the introduction of fresh complaint testimony; (5) the admission of expert testimony on the general characteristics of sexually abused children; (6) the exclusion of an opinion that the child witness in this case "lies a lot"; (7) the constitutionality of the child pornography statute, G. L. c. 272, § 29A (1988 ed.); and (8) the constitutionality of the videotaping statute, G. L. c. 278, § 16D (1988 ed.), as a denial of the right to a public trial.

We have addressed previously the issue of the codefendant's confrontation rights, as well as the quality of these videotapes. See *Commonwealth* v. *Tufts, supra*. The defendants' challenges are identical, and our decision in *Tufts* is equally applicable to the defendant in this case. We now address the defendant's remaining challenges.

1. *Expert testimony regarding the psychological or emotional trauma to the child if he testified in open court.* General Laws c. 278, § 16D, provides that a child can give videotaped testimony if "the court finds by a preponderance of the evidence at the time of the order that the child witness is likely to suffer

psychological or emotional trauma as a result of testifying in open court, as a result of testifying in front of the defendant, or as a result of both." We held in *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 550-551 (1988), that "the Commonwealth must show, by more than a mere preponderance of evidence, a compelling need for use of such a procedure. Such a compelling need could be shown where, by proof beyond a reasonable doubt, the recording of the testimony of a child witness outside the courtroom (but in the presence of the defendant) is shown to be necessary so as to avoid severe and long lasting emotional trauma to the child."

The judge in this case made a finding that the behavior exhibited by the boy in the courtroom, contrasted with his appearance and behavior in the lobby, satisfied him "beyond a reasonable doubt that it was necessary to record [the boy's] testimony outside the courtroom in order to prevent [the boy] from suffering psychological or emotional trauma." [2] The defendant argued below and argues now on appeal that the judge could not make this finding without relying on expert testimony. We disagree. See, e.g., *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 765 (1977) (nonexpert evidence including defendant's history of mental illness, medical records, facts of crime, and aberrant conduct or statements defeats presumption of sanity); *Commonwealth* v. *Tatisos*, 238 Mass. 322, 325-326 (1921) (within judge's wise discretion to determine child's competency after evaluating child's appearance and manner, her capacity to observe, remember, and express herself).

This case, perhaps uniquely so, presented the judge with ample evidence on which to base his finding. No medical evidence was required to sustain the judge's conclusion that the child witness in this case would suffer emotional or psychological trauma if he testified in open court. See *Commonwealth* v. *Monico*, 396 Mass. 793, 798 (1986) (expert testimony is not necessary to raise issue of insanity defense); *Common-*

---

[2] The defendant does not argue the issue whether the judge's finding is deficient in that it does not find the emotional trauma to be "severe and long lasting."

*wealth* v. *Laliberty*, 373 Mass. 238, 245 (1977). Rather than repeat all the facts relevant to the videotaping procedure presented in lengthy detail in *Commonwealth* v. *Tufts, supra*, we will summarize the factors upon which the judge could rely properly in making his decision.

The judge had questioned the child witness and had for three days observed him during voir dire conferences in the judge's lobby as well as in the courtroom in the jury's presence. The judge made an unchallenged finding that the four year old boy was competent to testify, after the boy explained the difference between the truth and a lie and showed an understanding of the importance of taking an oath. See *Commonwealth* v. *Reid*, 400 Mass. 534, 542-543 (1987); *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 329-330 (1986). When the child was asked general background questions in open court, in the presence of the jury and the defendants, he had no difficulty answering. When the child was asked in open court about what had happened at his old house, he kicked, turned around in his chair, bit his shirt, could not speak, put his head on the railing, had difficulty sitting up in his chair, and was unresponsive to questions. He reacted to questions about the sexual abuse by saying that he "didn't know it anymore," that he didn't "remember any of it," that "enough's enough," and that he had "already said it." In contrast, while in the judge's lobby, the child was able to give a detailed description, without much prompting, of the alleged physical and sexual abuse.

We conclude that the judge properly found, in his discretion, that, "at a minimum, [the boy] . . . had a story to tell, but would not tell it in the presence of the jury [and] defendants," and that "it was necessary to record [the child's] testimony outside the courtroom in order to prevent [the child] from suffering psychological or emotional trauma." See *Commonwealth* v. *Goulet*, 402 Mass. 299, 309 (1988) (trier of fact can reject insanity defense even in absence of expert opinion from Commonwealth); *Commonwealth* v. *Cullen*, 395 Mass. 225, 229-230 (1985) (judge entitled to infer sanity from facts underlying crime and evidence of defendant's actions before and after crime and to reject expert testimony of two psychiatrists

that defendant was insane); *Commonwealth* v. *Tarver*, 369 Mass. 302, 310 (1975) (determination of expert witness's qualifications and competence within judge's discretion); *Commonwealth* v. *Tatisos*, *supra* at 325-326 (determination of child's competence to testify within judge's discretion).

General Laws c. 278, § 16D, imposes no requirement that a judge's finding of psychological or emotional trauma be based on expert testimony. See also *People* v. *Johnson*, 146 Ill. App. 3d 640, 651 (1986) (judge's observation of five year old witness's reticence to testify in defendant's presence and the improvement in her testimony upon the defendant's removal "better demonstrated the necessity of the procedure than could the opinion of any expert"); *McGuire* v. *State*, 288 Ark. 388, 391-394 (1986) (judge properly allowed videotaping of eleven year old girl who, according to grandparents' testimony, was bashful and embarrassed about rape and easily upset).

2. *Fresh complaint witnesses.* The defendant argues that the testimony of three fresh complaint witnesses should have been excluded at trial because the complaints were not fresh and were offered to rehabilitate the witness rather than to corroborate his testimony. The boy's foster mother, a social worker from the Department of Social Services, and a psychiatrist who interviewed the child, all testified as fresh complaint witnesses. Each recounted the content of the boy's disclosures to her or him.

We recently stated that there is no absolute rule as to the time frame within which a sexual assault victim must make a first complaint for that complaint to be admissible in evidence as a fresh complaint. *Commonwealth* v. *Amirault*, 404 Mass. 221, 228 (1989), citing *Commonwealth* v. *Comtois*, 399 Mass. 668, 673 (1987). The time frame is especially flexible in the context of fresh complaints by young, sexually abused children. *Commonwealth* v. *Amirault*, *supra* at 229 (upholding admission of fresh complaint, made by four year old child, eighteen months after the child last attended abusive day care center); *Commonwealth* v. *Comtois*, *supra* at 672-673 n.9 (ruling admissible fresh complaint made by fourteen year old victim approximately nine months after last incident of abuse); *Com-*

*monwealth* v. *Densten*, 23 Mass. App. Ct. 981, 981-982 (1987) (statements of nine year old special needs boy made seventeen days after incident held admissible as fresh complaint). Child sexual abuse cases "constitute a factually distinct branch of the fresh complaint doctrine that gives special consideration to the natural fear, ignorance, and susceptibility to intimidation that is unique to a young child's make-up." *Commonwealth* v. *Amirault, supra* at 229. " ' The determination whether statements are sufficiently prompt to constitute fresh complaints rests within the sound discretion of the trial judge. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 691 (1982). The test is whether the victim's actions were reasonable in the particular circumstances of the case' " (citations omitted). *Commonwealth* v. *Amirault, supra* at 228. We have considered relevant the child's age, the length of time the child has been away from an abusive setting, whether the perpetrator used threats or coercion, and whether the perpetrator is a relative or close friend of the child. See *Commonwealth* v. *Comtois, supra* at 672 n.9 (when young victim has been under control of, and in reasonable fear of, defendant who is a close relative, promptness of complaint usually measured from date victim leaves defendant's control).

The victim in this case is a four year old boy who made allegations of physical and sexual abuse against his mother and a man he thought of as his father. The victim made his first disclosure of abuse eleven days after he left the abusive setting. He told his foster mother that he was afraid to tell because he would have to go home and would be hit. See *Commonwealth* v. *Comtois, supra* at 672-673 (where defendant warned daughter that she would get in trouble if she told anyone, victim made initial disclosure two months later). The child's first complaint eleven days after he was out of the defendants' control and later gradual disclosures were reasonably delayed, given the exceptional circumstances of this case. See *Commonwealth* v. *Amirault, supra* at 229; *Commonwealth* v. *King*, 387 Mass. 464, 473 (1982).

Furthermore, the judge instructed the jury to evaluate the promptness of the complaints to determine whether they were

fresh complaints. He instructed the jury that a fresh complaint "must be made reasonably prompt after the event as may be expected in light of all the circumstances" and that a fresh complaint must be made voluntarily. He further instructed the jury to disregard any fresh complaint testimony they found was not in fact a fresh complaint. See *Commonwealth* v. *Amirault, supra* at 230 (judge gave proper limiting instructions that jury should question whether complaint was "fresh"); *Commonwealth* v. *Densten*, 23 Mass. App. Ct. 981, 982 (1987) (judge gave limiting instructions to the jury that it was for jury to decide whether fresh complaint evidence should be accepted).

The defendant also argues that the complaints were offered to rehabilitate the witness rather than to corroborate his testimony.[3] The judge, however, gave limiting instructions to the jury regarding the limited purpose for which fresh complaint testimony could be used. He stated: "The fresh complaint testimony can only be considered for corroboration; that is, that the alleged victim complained to another person . . . ." We are unwilling to assume that the jury did not heed these instructions. See *Commonwealth* v. *Errington*, 390 Mass. 875, 882 (1984), citing *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981); *Commonwealth* v. *Leno*, 374 Mass. 716, 719 (1978). The judge, within his discretion, properly admitted the testimony of three witnesses as evidence of fresh complaint and gave appropriate accompanying limiting instructions. There was no error.

3. *Expert testimony on the general characteristics of sexually abused children.* The defendant challenges the admission in evidence of Dr. Brant's expert testimony on the general behavioral characteristics of sexually abused children. He argues

---

[3] The defendant did not move to strike any portion of the fresh complaint testimony as exceeding its proper function. See *Commonwealth* v. *Salim*, 399 Mass. 227, 237 (1987); *Commonwealth* v. *Stewart*, 398 Mass. 535, 543 (1986); *Commonwealth* v. *Cifizzari*, 397 Mass. 560, 575 n.19 (1986). Nor does the defendant identify any aspect of the fresh complaint testimony which was more than cumulative of the victim's testimony. See *Commonwealth* v. *Thomas*, 401 Mass. 109, 114 (1987); *Commonwealth* v. *Blow*, 370 Mass. 401, 404 (1976); *Commonwealth* v. *Izzo*, 359 Mass. 39, 43 (1971).

that such testimony should have been in response to a hypothetical question related to the facts of the case, whether assumed or in evidence. We disagree.

A trial judge has broad discretion with respect to the admission of expert testimony. *Commonwealth* v. *Ianello*, 401 Mass. 197, 200 (1987), citing *Commonwealth* v. *Gaulden*, 383 Mass. 543, 549 (1981). See *Commonwealth* v. *Lewandowski*, 22 Mass. App. Ct. 148, 150-151 (1986) (judge properly allowed expert witness to testify within his special expertise that victim's level of sexual knowledge was very sophisticated for her age). We have stated that testimony "on matters within the witness's field of expertise is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide." *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). *Commonwealth* v. *LaCorte*, 373 Mass. 700, 705 (1977). See, e.g., *Commonwealth* v. *Chapin*, 333 Mass. 610, 625-626, cert. denied, 352 U.S. 857 (1956) (expert testimony on defendant's sanity admissible although sanity to be determined by jury). See also Proposed Mass. R. Evid. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise").

Dr. Brant testified that sexually abused children often delay disclosure of sexual abuse or make gradual disclosures, retract their statements, and repress the abuse. The behavioral signs and symptoms she described include sexualized play, knowledge of adult sexual functions, fears and anxieties related to body parts, people, and places involved in the sexual abuse. She stated that sexually abused children exhibit impaired trust, withdrawal, depression, guilt, shame, anxiety, and hypervigilance (being on guard and ill at ease). Dr. Brant made no references or comparison to the child witness. See *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 175-176 (1983) (expert testimony about rape trauma syndrome held admissible where expert witness did not testify that victim in case had been raped or that she displayed behavior consistent with syndrome).

The judge carefully explained to the jury the proper function of this expert testimony: "Ordinarily, a court does not permit people to give their opinions in a court of law. . . . However, under certain circumstances, courts permit people to give their opinions on certain matters if those opinions are helpful to a jury. . . . In this case, I have permitted certain doctors to give their opinions for whatever help or for whatever consideration you as jurors wish to give to that opinion. . . . [Y]ou can give to their opinions whatever weight or whatever consideration you want to give it. You can ignore their opinion completely. You can give it great weight or you can give it little weight. Having in mind what the issues are in this case, you are permitted to give to these opinions whatever consideration you deem that it is advisable and helpful to you. . . . It's merely to help you, if it does, in analyzing any of the issues in this case. If it doesn't help you at all, you can easily ignore it." Later, in his final instructions to the jury, he explained: "[E]xpert witnesses do not decide cases; jurors do. So expert witnesses cannot usurp your role as finders of the facts. They can assist a jury, if they do, by providing information to help you better understand and better explain the testimony that you hear and then have to weigh and consider in your deliberations. These expert witnesses cannot determine those issues of fact for you that you alone have the responsibility to make. You are not bound by the testimony of an expert witness. You are entitled to accept the testimony of an expert witness, you can reject it, you can give to it whatever weight you think it's entitled to." Such limiting instructions safeguarded the jury's proper use of Dr. Brant's expert testimony. See *Commonwealth v. Amirault*, 404 Mass. 221, 231-232 (1989).

Other courts have uniformly allowed expert testimony on the typical symptoms of sexually abused children because the information is beyond the common knowledge of jurors and of assistance in assessing a victim witness's testimony and credibility. See *State* v. *Lindsey*, 149 Ariz. 472 (1986) (behavior patterns of young incest victims beyond common sense, experience, and education of average juror); *State* v. *Myers*, 359 N.W.2d 604, 610 (Minn. 1984) (child sexual abuse places

jurors at disadvantage); *Smith* v. *State*, 100 Nev. 570, 572-573 (1984) (expert testimony would help jury understand seemingly unusual behavior of victim and mother). "While jurors may be capable of personalizing the emotions of victims of physical assault generally, and of assessing witness credibilty accordingly, tensions unique to the trauma experienced by a child sexually abused by a family member have remained largely unknown to the public. As the expert's testimony demonstrates the routine indicia of witness reliability — consistency, willingness to aid the prosecution, straightforward rendition of the facts — may, for good reason, be lacking. As a result jurors may impose standards of normalcy on child victim/witnesses who consistently respond in distinctly abnormal fashion." *State* v. *Middleton*, 294 Or. 427, 440 (1983) (Roberts, J., concurring). See also *State* v. *Lindsey*, *supra* at 474 (jurors benefit from expert testimony explaining behavior they might otherwise "attribute to inaccuracy or prevarication, but which may be merely the result of immaturity, psychological stress, [or] societal pressures"); *People* v. *Benjamin R.*, 103 A.D.2d 663, 669 (N.Y. 1984) (average juror lacks general awareness of young victim's reaction to sodomy or sexual abuse).

We conclude that Dr. Brant's expert testimony in this case about the general behavioral characteristics of sexually abused children was admissible within the judge's sound discretion and properly limited by the judge's instructions to the jury.

4. *Exclusion of statement that child witness "lies a lot."* At trial, the defendant sought to introduce the statement of the child witness's first foster mother that the boy "lies a lot," as evidence of general reputation and character. According to defense counsel's offer of proof, the boy's foster mother at the time of trial had taken notes during a telephone conversation with the child's first foster mother. The notes included reference to the first foster mother's statement that the boy "lies a lot." The defendant argues that, although a five year old boy cannot have a general reputation in a community, the statement that the boy "lies a lot" was admissible because it suggests a poor reputation for truth and veracity within his foster family. We disagree.

A witness can testify as to another witness's general reputation for truthfulness and veracity among those who know him. See G. L. c. 233, § 21A (1986 ed.). Competent evidence of reputation must reflect "a uniform and concurrent sentiment [in the public mind]." *Commonwealth* v. *Baxter*, 267 Mass. 591, 593 (1929). A witness's character "could be shown only by evidence of [his] general reputation as disclosed by the common speech of [his] neighbors and members of the community." *Id.* See *Commonwealth* v. *Edmonds*, 365 Mass. 496, 503-504 (1974) (character evidence is by evidence of reputation in community); *Commonwealth* v. *Porter*, 237 Mass. 1, 4 (1921). "General reputation" is the "uniform and concurrent sentiment" in the "public mind." *Commonwealth* v. *Baxter*, 267 Mass. 591, 593 (1929).

The defendant concedes that the out-of-court statement that the boy "lies a lot" was made by one person who had known the child for only ten days. We conclude that the statement was inadmissible as evidence of reputation. See *F.W. Stock & Sons* v. *Dellapenna*, 217 Mass. 503, 506 (1914) (impeaching evidence must be of general reputation, not private opinions of a few); *Commonwealth* v. *Baxter*, *supra* at 593 (upholding exclusion of personal impressions of five individuals regarding person's character); *Commonwealth* v. *Gomes*, 11 Mass. App. Ct. 933, 933-934 (1981) (opinion of reputation cannot be based on comments of five people); *Commonwealth* v. *LaPierre*, 10 Mass. App. Ct. 871, 871 (1980) (opinion of three fellow workers that witness "wouldn't know the truth if it hit her in the face" properly excluded). "Personal opinions and isolated acts are not evidence of general reputation." *Commonwealth* v. *Roberts*, 378 Mass. 116, 129 (1979), and cases cited therein. Evidence of specific or particular acts of lying or similar misconduct is not admissible; nor is the opinion of a witness as to the character of the witness being impeached. *Commonwealth* v. *Binkiewicz*, 342 Mass. 740, 755-756 (1961). *Eastman* v. *Boston Elev. Ry.*, 200 Mass. 412, 413 (1909). Contrast Proposed Mass. R. Evid. 405 (a) (allowing, in some circumstances, opinion testimony or evidence of specific instances of conduct).

5. *The constitutionality of the child pornography statute,* G. L. c. 272, § 29A. The defendant argues on appeal that, because we held the child pornography statute, G. L. c. 272, § 29A (1986 ed.), unconstitutionally overbroad in *Commonwealth* v. *Oakes,* 401 Mass. 602 (1988), his convictions on two indictments charging child pornography should be reversed. Our decision in *Oakes* was released in February, 1988, long after the June, 1987, trial in this case. At no time prior to, or during, trial did the defendant challenge either the constitutionality of G. L. c. 272, § 29A, or the application of that statute to him. We need not consider an issue not raised below. *Commonwealth* v. *Haas,* 398 Mass. 806, 816 n.10 (1986). *Commonwealth* v. *Helfant,* 398 Mass. 214, 232 (1986), citing *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 308 (1984).[4]

6. *The constitutionality of G. L. c. 278, § 16D, as a denial of the defendant's right to a public trial.* The defendant argues, on appeal, for the first time, that his right to a public trial was abridged by G. L. c. 278, § 16D, which permits a child witness to give videotaped testimony.[5] The defendant makes no reference to any objection at trial on the basis of a right to a public trial. Having reviewed the record, we conclude that the defendant did not preserve his right to raise this issue on appeal. "An issue not fairly raised before the trial judge will not be con-

---

[4] The United States Supreme Court reversed our decision in *Oakes,* and remanded the case to our court. *Massachusetts* v. *Oakes,*        U.S.
(1989) (109 S.Ct. 2633 [1989]). Even if the issue were properly before us, the defendant here does not contend that the statute is vague as applied to the facts of this case.

[5] We suggested in *Commonwealth* v. *Bergstrom,* 402 Mass. 534 (1988), that the videotaping of a child witness's testimony should be "structured so as to be in compliance with the constitutional requirements of a public trial." *Bergstrom, supra* at 551. The United States Supreme Court has struck down a statute excluding the press from the courtroom during the testimony of a child rape victim. See *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596 (1982). The Supreme Court emphasized that its holding in *Globe Newspaper Co.* was narrow, stating that "a rule of mandatory closure respecting the testimony of minor sex victims is constitutionally infirm." *Id.* at 611 n.2. General Laws c. 278, § 16D, has no similar provision which would require exclusion of the press during a child victim's testimony.

sidered for the first time on appeal." *Commonwealth* v. *Marchionda*, 385 Mass. 238, 242 (1982). *Commonwealth* v. *Lewis*, 346 Mass. 373, 383 (1963), cert. denied, 376 U.S. 933 (1964).

*Judgments affirmed.*