COMMONWEALTH *vs.* JOHN TINGLEY.

No. 90-P-915.

Plymouth. February 7, 1991. - June 23, 1992.

Present: BROWN, PERRETTA, & GREENBERG, JJ

*Indecent Assault and Battery. Evidence,* Fresh complaint. *Witness,* Child. *Practice, Criminal,* Interpreter.

At the trial of a defendant charged with indecent assault and battery upon his four year old daughter, it was within the judge's discretion to admit, under the fresh complaint doctrine, testimony as to the child's statements to her mother and to a police officer about one year after the events alleged in the criminal complaint. [709]

At the trial of a defendant charged with indecent assault and battery upon his four year old daughter, the testimony of a police officer was properly admitted under the fresh complaint doctrine even though it varied in some respects from the child's testimony, where the content of the challenged testimony was not such as would fill any gaps in the Commonwealth's proof of the essential elements of the crime. [709-710]

At the trial of a defendant charged with indecent assault and battery upon his four year old daughter, the admission, under the fresh complaint doctrine, of testimony as to the child's reports of indecent touching by the defendant at a time prior to that specified in the criminal complaint created a substantial risk of a miscarriage of justice and, in the circumstances, necessitated reversal of the defendant's conviction. [710-712]

At the retrial of a criminal case, the defendant was to have a further opportunity to show whether his hearing impairment, if any, would require appointment of an interpreter. [712]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on July 21, 1986.

On appeal to the jury session of the Wareham Division, the case was tried before *W. James O'Neill,* J.

*Richard F. Kerr* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. This is an appeal from a conviction by a jury of six on a complaint charging the defendant with an inde-

cent assault and battery upon his four year old daughter. Because certain testimony exceeded the limits of the fresh complaint doctrine, we reverse the conviction.

1. *The evidence.* There was evidence to show that on May 20, 1985, the defendant, his wife, and their daughter moved from Foster Street to a duplex house on Moraine Street in Brockton. The second unit was to be occupied by relatives. Because that unit was not quite ready for occupancy, the relatives stayed with the defendant and his family for a short time. They slept in the first-floor living room area.

At the time of trial on the complaint, the child was six years old. Understandably, most of her testimony was given in response to leading questions. Those responses indicated that shortly after the family moved into their Moraine Street house, the defendant touched his daughter's vagina with his penis. The indecent touching took place while the child was on the couch in the living room. When asked how many times her father had touched her with his penis, the child responded "once."

On cross-examination, the child could not remember whether either she or her father was dressed during the incident. She said that she did not see his penis, that they were not watching television or sleeping, and that her father committed this act upon her after her relatives had moved into their own home.

It was not until almost a year after the alleged event that the child, in response to questions from her mother, spoke of the incident. The mother testified that in early March, 1986, she was in the living room changing the child for bed. The defendant was in an adjoining room. The child hid from her father's view, saying, "Don't let Daddy see me undress." Soon thereafter, on March 16, the mother and the defendant (who had been separated for six months in 1983) had a heated argument which culminated in the defendant's departure from the Moraine Street marital home.

About three weeks later, on April 8, the mother asked the child why she had not wanted to undress in front of the defendant. The mother testified that the child then told her

about the indecent touching which was the subject of the complaint. She then went on to relate that the child told her the defendant also had touched her breasts and buttocks and put his fingers in her mouth. These touchings took place before the family's move from Foster Street to Moraine Street in May of 1985. When the mother asked why she had not told her sooner, the child's responses were vague. It was the mother's "understanding" of her daughter's statements to her that the indecent touching which is the subject of the criminal complaint took place during the time that the family relatives were living with them.

Two days after this conversation, the mother brought the child to her pediatrician. Within a matter of weeks, the mother was in contact with the Department of Social Services and Officer Lee Kendrick of the Brockton police department. In the course of his investigation, Kendrick interviewed the child numerous times. It was not until the end of May, 1986, that he had a conversation of any substance with her. The child and Kendrick were in the living room of the Moraine Street home, and her mother was in the kitchen.

Kendrick testified that during this interview, the child told him that, on an unspecified date but soon after moving to Moraine Street, she was asleep on the living room couch. When she went to sleep, she was wearing her Care Bears nightgown and underwear. She was awakened by her father. When she awoke, both were undressed. He touched her vagina with his penis. She told him to stop, and he did. She then dressed herself and went back to sleep.

During this interview, the child told Kendrick that "it" only happened once on Moraine Street. She also told Kendrick that there was some other incident at the family's former home on Foster Street, but, as related by Kendrick, "she wasn't too clear as to what exactly happened." The child gave Kendrick no specifics as to the occurrence between herself and the defendant while they lived on Foster Street.

2. *The fresh complaint testimony.* There are two discrete claims in respect to the fresh complaint evidence: (1) the un-

timeliness of the child's complaint; and (2) the scope of the testimony.

In considering the first claim, lack of promptness by the child in telling her mother, we apply the principle that "[c]ourts have not insisted on great promptness for fresh complaints in prosecutions involving child sexual abuse." *Commonwealth* v. *Amirault*, 404 Mass. 221, 229 (1989). For a ready compilation of the range of the decisions, based upon the age of the victim, the time involved, and the circumstances of any delay, see Appendix B to *Commonwealth* v. *Dion*, 30 Mass. App. Ct. 406, 416-417 (1991).

There is sufficient flexibility in the fresh complaint doctrine to allow for a ten-month delay by a four year old child who would be naturally ignorant as to the magnitude of the wrongful touching, especially where the perpetrator of the assault is a parent with whom the child resides. We are mindful of the fact that her complaint was made in response to questions put to her by her mother after an argument with and separation from the defendant. However, we think the mother's inquiry was sufficiently broad — why didn't the child want her father to see her while she was changing — that the child's reply had a spontaneity which did not indicate "mere acquiescence to ideas suggested by her mother." *Commonwealth* v. *Fuller*, 399 Mass. 678, 682 (1987).

These circumstances support the trial judge's exercise of discretion to allow fresh complaint testimony. See *Commonwealth* v. *Amirault*, 404 Mass. at 229, citing *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 626 n.6 (1987); *Commonwealth* v. *Dockham*, 405 Mass. 618, 625-627 (1989), and cases therein cited.

There are limits to fresh complaint testimony, and the defendant argues that they were exceeded. Kendrick's testimony, more than the mother's, provided many details about which the child either did not testify or testified differently. "In Massachusetts, unlike most jurisdictions, a witness may testify to the fact of a complaint and also to the details of the complaint" (footnote omitted). *Commonwealth* v. *Licata*, 412 Mass. 654, 657 (1992), citing *Commonwealth* v. *Bailey*,

370 Mass. 388, 391-392 (1976), and *Commonwealth* v. *La-valley*, 410 Mass. 641, 643 (1991).

We do not regard the details supplied by Kendrick (the child went to sleep wearing a nightgown and underwear, and when she was awakened by her father, both were undressed) as exceeding the limit of the rule that "only those details to which the victim has testified generally at trial are admissible as corroboration by way of evidence of a prior fresh complaint." *Commonwealth* v. *Licata*, 412 Mass. at 659 n.8, citing *Commonwealth* v. *Kirouac*, 405 Mass. 557, 565 (1989), and *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. 515, 527 n.8 (1991). Moreover, the fact that these aspects of Kendrick's fresh complaint testimony were, in some respects, at variance with the child's testimony did not require their exclusion. The crucial point is that this testimony did not fill in any gaps in the Commonwealth's proof of the essential elements of the crime. See *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976); *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992); *Commonwealth* v. *Coleman*, 30 Mass. App. Ct. 229, 236 (1991). Moreover, we do not think that these details, when viewed with the child's testimony, were either "particularly inflammatory . . . [or] needlessly repeated." *Commonwealth* v. *Scanlon*, 412 Mass. at 671 n.5. Compare *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. at 518-519, 527 n.8.

Both Kendrick and the mother also testified, however, to statements made to them by the child which cannot, under any circumstances, be deemed as details of the event to which she testified at trial. There is nothing in the child's testimony concerning any indecent touching by the defendant other than the incident which occurred at the Moraine Street residence sometime between May 20 and May 27, 1985. The fresh complaint testimony included reports by the child that the defendant had touched her breasts and buttocks at a time (while the family was residing on Foster Street) well prior to that specified in the criminal complaint.

This testimony was not corroborative of that given by the child, and it was not, therefore, within the permissible limits

of the Massachusetts rule. See *Commonwealth* v. *Kirouac*, 405 Mass. at 565; *Commonwealth* v. *Scanlon*, 412 Mass. at 671-672.

Objections to the testimony were based upon a lack of promptness. There was an additional ground advanced as to Kendrick's testimony, but it was "inaudible." The trial judge's rulings, however, are clearly reported. He concluded that the conversations were admissible in their entirety. This conclusion was erroneous. See *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. at 527 n.8.

It makes no difference in our analysis whether a proper objection was taken. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). There is a very substantial risk that the jury relied on the inadmissible reference to a prior indecent touching to convict the defendant of the identical offense under consideration. The improper reference was exacerbated by the trial judge's instructions to the jury on the elements of the crime: "An indecent act is one that is fundamentally offensive to contemporary standards of decency and moral values. It is behavior which the common sense of society would regard as immodest, immoral and improper. An assault and battery is indecent if it involves touching the portions of the anatomy commonly thought private, such as a person's genital area or the breast of a female." The inadmissible testimony, that the defendant allegedly touched the child's breasts and buttocks on a prior occasion, could have been taken as proof of the indecent touching charged in the criminal complaint.

Moreover, there is nothing in the fresh complaint instructions or the charge in its entirety which provides us with a reliable basis for concluding that the risk was somehow ameliorated. Additionally, it was the defendant's theory of defense that the child's complaint was instigated by the mother, who was motivated by her recent argument with and separation from the defendant. Defense counsel stressed discrepancies in the child's testimony and the vagueness of her memory. Moreover, there is the dangerous possibility that the opinion of the Commonwealth's expert, that the child

was more aware of sexual matters than the "typical" child her age, might have given credence to the unsupported inadmissible hearsay. For these reasons, we conclude that the improper reference to a prior indecent assault and battery was so prejudicial as to require reversal of the conviction. Contrast *Commonwealth* v. *Scanlon*, 412 Mass. at 671-672.

3. *Other issues.* Although the defendant has raised other issues on appeal, we consider only those which might recur at any retrial. The defendant has not clearly identified an error in the trial judge's ruling concerning the testimony of the Commonwealth's expert. If the claim is that the witness went beyond the area established by the motion in limine, it is unsupported by the transcript. As for the admissibility of the testimony itself, it is enough to state that the trial judge did not abuse his discretion. See *Commonwealth* v. *Dockham*, 405 Mass. at 628-630; *Commonwealth* v. *Lewandowski*, 22 Mass. App. Ct. 148, 150-151 (1986).

It appears from the defendant's first motion for a new trial that he claims to be hearing-impaired. In denying the motion, the trial judge made detailed findings of fact in support of his conclusion that the defendant had been able to hear throughout the proceedings. It has not been shown that those findings are erroneous. However, in an abundance of caution and in light of the passage of time between those findings and any retrial, we think that the defendant should be allowed to show whether his hearing impairment, if any, has so worsened that he has need for the appointment of an interpreter under G. L. c. 221, § 92A.

*Judgment reversed.*
*Verdict set aside.*