COMMONWEALTH *vs.* P. CHRISTOPHER MCCAFFREY.

No. 93-P-959.

Franklin. December 21, 1993. - June 1, 1994.

Present: DREBEN, GREENBERG, & LAURENCE, JJ.

*Unnatural Sexual Intercourse. Evidence,* Fresh complaint, Corroborative evidence, Cross-examination, Expert opinion. *Practice, Criminal,* Instructions to jury. *Witness,* Corroboration, Credibility, Child, Competency.

At the trial of an indictment for unnatural sexual intercourse with a child under the age of sixteen in which the credibility of the witnesses was the sole issue for determination, the judge incorrectly admitted fresh complaint testimony that exceeded the scope of the alleged victim's testimony and was highly inflammatory; the error was prejudicial and a new trial was required. [585-589]

At the trial of an indictment for unnatural sexual intercourse with a child under sixteen, the record of the judge's inquiry of the five year old alleged victim supported his conclusion that the child was competent to testify and no substantial risk of a miscarriage of justice was created by the failure to place the child formally under oath. [589-590]

There was no merit to a criminal defendant's claim that he was prejudiced by denial of his request for pretrial disclosure of expert testimony, where defense counsel had four months to review the expert's notes and three weeks' notice that the expert would be a potential witness. [590]

At the retrial of a sexual abuse case, the issue of the scope of expert testimony on behalf of the Commonwealth by a psychologist and expert in the area of child abuse, who was also the alleged victim's therapist, was to be considered in light of the holdings of *Commonwealth* v. *O'Brien,* 35 Mass. App. Ct. 827, 832-833 & n.6 (1994), and *Commonwealth* v. *Dockham,* 405 Mass. 618, 628 (1989). [590-594]

INDICTMENT found and returned in the Superior Court Department on March 18, 1991.

The case was tried before *Elbert Tuttle,* J.

*Edward P. Mulvaney* for the defendant.

*Shaun S. McLean,* Assistant District Attorney, for the Commonwealth.

LAURENCE, J. A jury convicted P. Christopher McCaffrey of "unnatural sexual intercourse" with his daughter, a child under the age of sixteen. We agree with McCaffrey that the testimony of the fresh complaint witness (the child's mother and McCaffrey's estranged wife) exceeded the permissible bounds of such testimony, to his prejudice, and accordingly reverse the judgment of conviction.

The child, Erin (a pseudonym), who was five years old at the time of trial, testified on direct examination that, when she was two, McCaffrey had inserted his finger into her vagina. On cross-examination, Erin admitted that this had happened only once. When Erin's mother was next called as a fresh complaint witness, McCaffrey moved at sidebar for a voir dire of her proposed testimony, on the ground that it would include improper details beyond those testified to by Erin. The trial judge denied his motion. The prosecutor then alerted the judge that Erin had earlier disclosed more information to her mother than she had disclosed in her testimony — including a charge of fellatio—and that the prosecutor was concerned about whether she should ask the mother about such matters.

The judge professed an awareness that fresh complaint evidence is not to be used in any substantive, but only a corroborative manner. See *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976); *Commonwealth* v. *Snow*, 30 Mass. App. Ct. 443, 446 (1991). He nonetheless instructed the prosecutor that everything Erin had revealed to her mother should be presented to the jury, stating that he regarded the additional disclosures as "a material thing that the jury ought to evaluate as to whether or not that, in fact, occurred," and further observing that he did not "want any [of the mother's] testimony truncated in any way . . . [because] [t]his is an inquiry into the truth and we're entitled to know what happened." He also announced that he would be giving an appropriate limiting instruction regarding fresh complaint testimony.[1]

---

[1]Since the trial of this case, we have declared that when there is forewarning that proposed fresh complaint witnesses may describe alleged sex-

Erin's mother proceeded to testify that in October, 1989, Erin told her that "her father had put his weenie in her mouth and that it tasted yucky." Immediately after the mother made this statement, the judge asked her to repeat it. After doing so, the mother went on to testify that in March, 1990, Erin had told her that "her daddy had poked" her private parts. Asked by her mother at that time to show what she meant, Erin "took her index finger of her right hand, put it into her underwear and into her vagina." Following the mother's direct testimony, the judge instructed the jury specially on fresh complaint evidence, instructions which he later repeated in his general charge.

On appeal the Commonwealth has conceded, as it must, that the mother's testimony regarding the October, 1989, "weenie" incident exceeded the proper limits of fresh complaint.[2] The Commonwealth contends, however, that any er-

---

ual offenses by the defendant not testified to by the victim, "it is better to conduct a voir dire examination of the witness so that the judge may prune out extraneous matter before the jury hears it." *Commonwealth* v. *Flebotte*, 34 Mass. App. Ct. 676, 680 (1993), S.C., 417 Mass. 348 (1994).

[2]Hearsay evidence that the victim seasonably made an out-of-court complaint to a witness after a sexual assault has, despite misgivings, been held admissible as part of the prosecution's case-in-chief, not only regarding the fact that the complaint was made, but also extending to the details of the complaint. *Commonwealth* v. *Licata*, 412 Mass. 654, 657 (1992). Courts have "never insisted that fresh complaint testimony be sanitized to match exactly the testimony of the complaining witness." *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992). It is equally established that fresh complaint witnesses "may not testify to details which add substantively to the complainant's account." *Commonwealth* v. *Snow*, 30 Mass. App. Ct. 443, 446 (1991). "[O]nly those details to which the victim has testified generally at trial are admissible as corroboration by way of evidence of a prior fresh complaint." *Commonwealth* v. *Licata*, 412 Mass. at 659 n.8. "[T]he acts about which the [fresh complaint] witness testifies . . . must have been testified to by the complainant." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 351 (1994). "[W]here a [fresh complaint] witness testifies regarding details of an event that the witness has not testified to more generally, we have stated that such testimony is not permissible." *Commonwealth* v. *Scanlon*, 412 Mass. at 670. See also *Commonwealth* v. *Tingley*, 32 Mass. App. Ct. 706, 710-711 (1992); *Commonwealth* v. *Sugrue*, 34 Mass. App. Ct. 172, 174-175 (1993). Erin's testimony was limited to one incident involving the defendant's inserting his finger into her vagina. The mother's testimony that Erin told her the defendant had inserted his penis into Erin's mouth reflected an entirely distinct, noncumulative event

ror was harmless because the testimony "did not fill gaps in the prosecution's case," and because any risk of prejudice to McCaffrey was "ameliorated" and "minimized" by the judge's reiterated fresh complaint instructions (the propriety of which McCaffrey does not challenge). We are not persuaded by this "harmless error" argument. The formulaic and unelaborated contention that the mother's superfluous testimony did not "fill gaps" in the prosecution's case is subverted by the Commonwealth's acknowledgement that the testimony introduced new substantive detail and did extend beyond mere corroboration. The prohibition against gap filling simply reflects the fundamental premise that fresh complaint testimony can be utilized for corroborative purposes only and not as substantive evidence of the elements of the crime charged.

Although curative instructions "*usually* render[ ] any error in the introduction of prejudicial evidence harmless," *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981) (emphasis added), we do not think that those given in this case sufficiently dissipated the prejudice to McCaffrey that inevitably flowed from the revelation of the October, 1989, incident — an encounter involving an alleged act that might well have been contemplated by a jury of ordinary sensibilities as not only "unnatural" but as a revolting if not monstrous exploitation of a vulnerable infant. The judge's instructions were neither as "forceful" nor as "clear" as the Commonwealth suggests. Despite stating that the mother's testimony was corroborative only and that the central concern for the jury in connection with the issue of the defendant's guilt was Erin's testimony, the judge delivered fresh complaint instructions that were essentially "standard," *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 754 (1986), and "boilerplate," *Commonwealth* v. *Gallego*, 27 Mass. App. Ct. 714, 720 (1989), without an explicit definition of the term or explanation of the function of corroboration. Cf. *Common-*

---

that did not corroborate Erin nor constitute merely elaborative details of her testimony.

*wealth* v. *Licata,* 412 Mass. 654, 660 (1992); *Commonwealth* v. *Scanlon,* 412 Mass. 664, 674 (1992).

Rather than providing "explicit warnings" to the jury, *Commonwealth* v. *Gallego, supra* at 720, that addressed the specific problem created by the mother's excess testimony, cf. *Commonwealth* v. *Kelly,* 417 Mass. 266, 271 (1994); *Commonwealth* v. *Ward,* 28 Mass. App. Ct. 292, 296 (1990), the judge may have exacerbated the problem. He effectively focused the jury's attention directly on the October, 1989, incident by telling them several times that they could consider "any statements" that Erin made in determining her credibility; and in that connection they could consider statements attributed to Erin by her mother. It is not difficult to envision the jury's perplexity, in attempting to distinguish between what Erin had said while testifying and what her mother had testified she said, after the judge concluded the charge by stressing that "essentially this case boils down to what [Erin] said actually occurred and your determination of her credibility." Instructions that are ambiguous or tend to create jury confusion on critical issues cannot be deemed sufficiently curative, at least where the error requiring mitigation created a substantial risk of prejudice. See *Commonwealth* v. *Tingley,* 32 Mass. App. Ct. 706, 711-712 (1992). Cf. *Commonwealth* v. *Montanino,* 409 Mass. 500, 508-511 (1991); *Commonwealth* v. *Scanlon,* 412 Mass. at 674; *Commonwealth* v. *Kelly,* 417 Mass. at 271-272; *Commonwealth* v. *McLeod,* 30 Mass. App. Ct. 536, 539-540 (1991).

We have no doubt that the error (to which McCaffrey strenuously objected) entailed serious potential prejudice to the defense. Erin testified to only one incident of "unnatural sexual intercourse" involving digital penetration. Contrast *Commonwealth* v. *Snow,* 30 Mass. App. Ct. at 444, 446, and *Commonwealth* v. *Caracino,* 33 Mass. App. Ct. 787, 791-792 (1993) (multiple episodes of sexual assault testified to). The Commonwealth's case proving that one event was far from overwhelming. It turned entirely on Erin's credibility — an issue that the jury were expressly directed to evaluate by reference to the mother's testimony regarding the distinct

and distinctly more disturbing October, 1989, indecent act. That testimony was the very first accusation against the defendant that the jury heard the mother make on the stand.

The putative actuality of the fellatio accusation was immediately enhanced, at the judge's insistence, by the mother's repetition of her testimony. Such testimonial charges of sexual molestation of a child are recognized as being inherently "inflammatory." See *Commonwealth* v. *Montanino*, 409 Mass. at 506; *Commonwealth* v. *Flebotte*, 417 Mass. 348, 352-353 (1994). Having been twice described in testimony, the imputation was thrice indirectly referred to in the prosecutor's closing argument as being included in Erin's "allegations" against her father. As she concluded her summation, the prosecutor specifically asked the jury to remember Erin's striking response to her molestation — "yucky" — the very description which Erin was alleged by her mother to have given of her reaction to the October, 1989, oral penetration incident.

Examining the error, as we must, in the context of the whole trial, we find "nothing in the fresh complaint instructions or the charge in its entirety which provides us with a reliable basis for concluding that the risk [that the jury may have relied in its deliberations on the inadmissible reference to the separate act of sexual molestation mentioned by the fresh complaint witness but not the victim] was somehow ameliorated." *Commonwealth* v. *Tingley*, 32 Mass. App. Ct. at 711. Even had the instructions been technically correct, we would nonetheless be presented with one of the rare situations in which "the risk that the jury will not, or cannot, follow [even proper] instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 548 (1971). Such a risk obtains "[p]articularly in sexual assault cases [where] the extraneous evidence may have a gripping quality and asking the jury to disregard it may be tantamount to asking the jury to ignore that an elephant has walked through the jury box." *Commonwealth* v. *Flebotte*,

34 Mass. App. Ct. 676, 680 (1993), *S.C.*, 417 Mass. 348 (1994).

McCaffrey's jury, however, were instructed not to disregard but rather to consider carefully the erroneously included evidence, which implicated the central issue in the case and which the prosecutor effectively kept before the jury. Here, the unignorable was more akin to a herd of elephants indelibly trampling that evidence into the jurors' collective consciousness. In these circumstances, we "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the [jury's] judgment was not substantially swayed by the error . . . [and] that the judge's error in admitting the improper testimony was not prejudicial." *Commonwealth v. Flebotte*, 417 Mass. at 353. See also *Commonwealth v. Kirouac*, 405 Mass. 557, 565 (1989); *Commonwealth v. Kelley*, 417 Mass. at 271-272; *Commonwealth v. Tingley*, 32 Mass. App. Ct. at 711-712.[3]

McCaffrey's remaining assignments of error require little discussion, except for one that may arise at any retrial. He argues (for the first time on appeal) that Erin was never formally sworn at trial; that her testimony was, therefore, inadmissible; and accordingly, that he was entitled to a required finding of not guilty (even though his motion for such a finding did not mention this supposed defect). His contention falls short of demonstrating a substantial risk of a miscarriage of justice. See *Commonwealth v. Freeman*, 352 Mass. 556, 564 (1967). The record of the judge's inquiries of and directions to Erin regarding telling the truth support the

---

[3]Compare as to the issue of prejudice *Commonwealth v. Licata*, 412 Mass. at 659-660 ("prejudice is self-evident when [the victim's] version of an incident is allowed to be repeated again and again," as in effect occurred here with repeated direct and indirect references to the oral penetration allegation); *Commonwealth v. Montanino*, 409 Mass. at 505-506 (admission of victim's testimony regarding the defendant's prior "bad acts" of sexual molestation of children other than the sexual offense charged in the indictment held prejudicial error; it "diverts the attention of the jury from the [crime] immediately before it; and by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him").

judge's discretionary conclusion that the child understood the difference between the truth and lying and the importance of testifying truthfully.[4] The judge's exchanges with the child witness effectively served the underlying purpose of the oath, and no more could be reasonably required of an infant deemed competent to testify, but manifestly lacking in theological understanding. See *Commonwealth v. Tatisos*, 238 Mass. 322, 325-326 (1921); *Commonwealth v. Welcome*, 348 Mass. 68, 70 (1964); *Commonwealth v. Brusgulis*, 398 Mass. 325, 329 (1986); *Commonwealth v. Reid*, 400 Mass. 534, 542-543 (1987); *Commonwealth v. Rockwood*, 27 Mass. App. Ct. 1137, 1138 (1989); 6 Wigmore on Evidence § 1827 (2)(Chadbourn ed. 1976).[5]

McCaffrey's complaint that his cross-examination of the Commonwealth's expert was prejudicially impaired because of the denial of his request for pretrial disclosure of the expert testimony is also belied by the record. McCaffrey's counsel had over four months to review all of the expert's office notes and treatment records relating to Erin and was made aware of the expert's name, address, and status as a potential expert witness at least three weeks prior to trial. Nothing has been presented, beyond conclusory assertion, indicating the inadequacy of that lead time for preparation of effective cross-examination. No continuance to prepare cross-examination was sought. No funds for retainer of a rival expert were requested. No prejudice has been shown. See *Commonwealth v. Pope*, 19 Mass. App. Ct. 627, 630-631 (1985).

McCaffrey's final claim is that the Commonwealth's expert was allowed to invade the province of the jury by providing testimony that had the effect of bolstering Erin's credibil-

---

[4]The judge twice asked Erin to "agree that when you testify now, you'll swear to tell us the truth." The child affirmatively responded both times and indicated that she realized that her failure to tell the truth would result in punishment. We note that the prosecutor reiterated the judge's admonitions in questioning Erin.

[5]Had McCaffrey raised this objection at trial in a timely manner, it could have easily been cured by retroactive administration of an oath (or its equivalent), see *State v. Munnis*, 130 N.H. 641, 642 (1988), although we do not believe that even then the judge would have lacked discretion to refuse, under the circumstances, to elevate form over substance.

ity.[6] He has raised a troublesome issue. The witness (a psychologist and expert in the area of sexual abuse of children) first testified that she counseled sexually abused children and that such children exhibit certain general behavioral characteristics. She then was permitted to testify, over McCaffrey's objections, that Erin was currently her patient; that she had been treating Erin for about a year; that at the beginning of the therapy Erin had revealed that she had been sexually abused by her father; and that Erin had been placed in therapy groups for sexually abused children. The expert further described Erin's conduct during the early course of treatment in terms that the jury could not have failed to note resembled the behavior the expert had earlier testified to as characteristic of sexually abused children.

It is settled that an expert may not "offer his [or her] opinion on issues that the jury are equally competent to assess, such as credibility of witnesses. On such questions, the influence of an expert's opinion may threaten the independence of the jury's decision." *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982) (citations omitted). See *Commonwealth* v. *Montanino*, 409 Mass. at 504. There appears to be particular risk of undue influence when an expert's testimony can be construed as impliedly supporting the truthfulness of a victim in sexual abuse prosecutions. "As is often the case where there are charges of rape or sexual assault, the question of guilt or innocence rests in large part 'upon whether the jury

---

[6]McCaffrey also asserts that the judge erred regarding this expert in that there was no need for expert testimony because the subject matter was within the common knowledge of the jury and that no adequate foundation was laid for the particular expert utilized. He has, however, shown us nothing that demonstrates any abuse of the trial judge's wide discretion with respect to the admission of expert testimony generally, including evaluating the qualifications of proposed experts, and the use of expert testimony regarding the behavioral characteristics of sexually abused children specifically. See *Commonwealth* v. *Boyd*, 367 Mass. 169, 182 (1975); *Commonwealth* v. *Francis*, 390 Mass. 89, 98-99 (1983); *Commonwealth* v. *Ianello*, 401 Mass. 197, 200 (1987); *Commonwealth* v. *Dockham*, 405 Mass. 618, 628 (1989); *Commonwealth* v. *Mamay*, 407 Mass. 412, 421-422 (1990); *Commonwealth* v. *Hudson*, 417 Mass. 536, 540-542 (1994). The expert's qualifications here were amply spread upon the record.

believed the victim's version of what happened or the defendant['s].'" *Commonwealth* v. *Mendrala*, 20 Mass. App. Ct. 398, 402 (1985), quoting from *Commonwealth* v. *Bardner*, 350 Mass. 664, 667 (1966).

We have previously acknowledged this risk by admonishing that:

> "In offering an expert who would testify about the 'general characteristics' [of child victims of sexual abuse], the Commonwealth must take care not to lead the expert to trespass unduly on the jury's province to assess the credibility of witnesses, in particular the child as witness . . . . [T]he prosecution [must] . . . steer the expert clear of the question of the truthfulness of the particular child and in that connection to avoid involvement in the question whether the particular child was in fact abused or whether her behavior did or did not in fact conform to the 'general characteristics.'"

*Commonwealth* v. *O'Brien*, 35 Mass. App. Ct. 827, 832-833 & n.6 (1994), citing *Commonwealth* v. *Dockham*, 405 Mass. 618, 628 (1989).

See also *Commonwealth* v. *Swain*, *ante* 433, 444-445 (1994). Allowing the psychologist here to testify as both behavioral expert and treating therapist may well have approached too closely the forbidden issue of the victim's credibility. The fact that she had accepted Erin as a patient to be treated as a sexually abused child could easily give rise to the jury's inference that she had accepted Erin's allegations against her father as true and was providing her professional services as a result, thereby endorsing Erin's credibility as a victim of parental sexual molestation.

Without deciding the issue whether the behavioral expert's testimony in her dual role[7] as Erin's therapist was itself error

---

[7]Although the prosecution expert on sexually abused children in *Commonwealth* v. *Hudson, supra,* also treated the victim (a circumstance brought out only in cross-examination and redirect examination of the victim's mother), 417 Mass. at 539 n.2, the court emphasized that the expert did not (unlike the expert here) testify in that dual role. The expert "did

requiring reversal,[8] we urge the Commonwealth in any retrial to pay careful heed to the teachings of *Dockham* and *O'Brien* by utilizing sexual abuse experts who have no connection with and make no references to the child victim or

---

not connect her testimony to the victim or the defendant"; "did not directly refer to the victim or her symptoms"; "never explicitly or impliedly rendered an opinion as to the truthfulness of the victim"; and in no way improperly bolstered the victim's credibility. *Id.* at 539, 541, 543.

[8]But see *Commonwealth* v. *Ianello*, 401 Mass. at 201-202 (Supreme Judicial Court ruled that a trial judge properly excluded expert testimony, where the expert was offered to testify as to the likelihood that a child would lie about sexual abuse when that child's parents are engaged in a custody or visitation dispute, because the court believed that the jury would apply the expert's opinion to the complainant, thereby "impermissibly intrud[ing] upon the vital function of the jury"); *Commonwealth* v. *Montanino*, 409 Mass. at 504-505 (Supreme Judicial Court held that the admission of a police officer's testimony regarding the credibility of most sexual assault victims would be taken by the jury as endorsing the credibility of the alleged victim and amounted to error requiring reversal; the court observed that "[w]hile the proposed testimony fell short of rendering an opinion on the credibility of the specific [witness] before the court, we see little difference in the final result. It would be unrealistic to allow this type of . . . testimony and then expect the jurors to ignore it when evaluating the credibility of the complaining [witness]." *Id.* at 504, quoting from *Commonwealth* v. *Ianello*, 401 Mass. at 202); *Commonwealth* v. *Powers*, *ante* 65, 70-71 (1994) (testimony of witnesses deemed specially qualified in matters of sexual abuse of children directly bolstering credibility of victim held substantially prejudicial even in the absence of an objection by defendant). Contrast *Commonwealth* v. *Dockham*, 405 Mass. at 628 (expert who testified as to general characteristics of sexually abused children "made no references or comparison to the child witness"); *Commonwealth* v. *Mamay*, 407 Mass. at 421 (expert testimony "did not relate to the victims in this case. It was simply testimony relating to rape and sexual assault syndrome generally"); *Commonwealth* v. *Hudson*, 417 Mass. at 539, 543 (psychologist's testimony regarding typical symptoms of sexually abused children, which included symptoms testified to by the child victim and her mother, was proper because it never explicitly or implicitly opined as to the veracity of either the victim or sexually abused children generally); *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 175 (1983) (expert testimony "cast in tentative generalities, without regard to the incident or persons involved in this case"); *Commonwealth* v. *O'Brien*, 35 Mass. App. Ct. at 833-834 (expert testimony on direct limited to general characteristics; on cross-examination defense made tactical decision to go beyond the range allowed to prosecution by probing into the meetings between the expert and child, but "on the whole record [the court was] satisfied the jury could find their way and the defendant was well defended and fairly tried").

her family, lest the very real prospect of prejudicial error invalidate the proceeding. The verdict is set aside, the conviction is reversed, and the case is to stand for a new trial.

*So ordered.*