COMMONWEALTH *vs.* LISA A. BIBBY. Nos. 91-P-474 & 92-P-1433. December 30, 1993. *Prostitution. Practice, Criminal*, Disclosure of evidence, New trial. *Evidence*, Cross-examination, Argument by prosecutor.

On the basis of the evidence, it was possible for the jury of six, before whom the case was tried in a District Court,[1] to find that the defendant on January 19, 1990, had engaged in sexual conduct for a fee, in violation of G. L. c. 272, § 53A.[2] Specifically, the defendant permitted a patient at Medfield State Hospital to fondle her breasts for money. There was evidence that the defendant who had previously been a mental health worker at Medfield State Hospital, an institution for the mentally ill or impaired, had said to the inmate: "The price of a feel would be $75. That's the price of a feel and the price of sex." Money changed hands, according to the government's sole witness, a police officer for the Department of Mental Health assigned to Medfield State Hospital, and thereafter the defendant, who was seated in her stopped car, lifted her sweatshirt and allowed the patient to reach in. An arrest followed. The defendant makes six claims of error on direct appeal and also appeals the denial of a motion for a new trial. We affirm.

1. *Deficiencies in the Commonwealth's response to pretrial discovery orders.* At the inception of the trial, the defense moved to dismiss on the ground that certain items the Commonwealth had been ordered to furnish had not been included in the Commonwealth's reponse to discovery. Those items were: (1) the criminal record (it was never established that there was any) of the hospital patient who allegedly had paid for the sexual favor; (2) an unexpurgated statement made by the patient (on the copy furnished to the defense, certain clinical diagnostic information had been blotted out); (3) documents in possession of the Medfield police department; and (4) police photographs of the defendant. As to the first two items, we can cut through some befogging controversy about the defendant's follow-up on her requests, both before and at trial, because the defendant has not established that the patient's record and statement (the patient was not called as a witness by either side) had any relevance to the defense. There is a suggestion by the defense that more information about the patient and what he had said would tend to prove that the government had enforced the prostitution statute in a discriminatory fashion by complaining against the defendant Bibby, but not the patient. See *Commonwealth* v. *King*, 374 Mass. 5, 22-24 (1977) (Hennessey, C.J., concurring); *Commonwealth* v. *Franklin*, 376 Mass. 885, 894-895 (1978); *Commonwealth* v. *An Unnamed Defendant*, 22 Mass. App. Ct. 230 (1986). Even if the patient had been shown to have been a zestful patron of prostitutes throughout his life, that would have had no tendency in the circumstances to demonstrate an unequal enforcement of the law against the prostitute in comparison to the

---

[1] The defendant had elected first instance jury trial.

[2] General Laws c. 272, § 53A, inserted by St. 1983, c. 66, § 2, so far as pertinent, provides: "Any person who engages, agrees to engage, or offers to engage in sexual conduct with another person in return for a fee, or any person who pays, agrees to pay or offers to pay another person to engage in sexual conduct . . . may be punished. . . ."

customer. Here the customer was a patient in a State mental institution. His illness and protected status set him off from those not impaired and institutionalized and, presumptively, less vulnerable. The act of the defendant found by the jury to have been proved is the more sordid because she came to know the patient through her employment as a mental health worker. She owed him care, including protection, rather than exploitation.

Items 3 and 4 which the defendant claims not to have received were documents such as booking sheets, property logs, evidence lists, and intake sheets and a photograph of the defendant. The lack of those, defense counsel argues, impaired his ability to cross-examine Officer Plesh, the government's sole witness. As we read the record, the trial judge found that the government had turned over "everything" of consequence and defense counsel did not at the time say that matters lay otherwise. We will not entertain on appeal an opportunistic attack on the adequacy of the prosecution's production of documents that was not pressed below. One may add that at no point during the appeal did the defense identify what pertinent document had been withheld. Concerning the photograph of the patient, the prosecutor had responded she did not have one but that one might be in the possession of the Medfield police. How a photograph of the patient would have assisted defense counsel is a question the defendant's brief does not confront. In any event, it was the responsibility of defense counsel to follow up with the Medfield police whether they had a picture of the defendant.

2. *Discriminatory prosecution.* For reasons discussed in connection with the previous point, the trial judge correctly declined to dismiss the complaint as discriminatory prosecution.

3. *Scope of prosecution's cross-examination.* Among the witnesses called by the defense was James McNulty, a mental health worker at Medfield State Hospital who had observed the events that gave rise to the charges against Bibby. The strategic purpose of the defense seemed to be to expose differences in what McNulty saw and heard and what the prosecution's witness, Plesh, saw and heard. During cross-examination of McNulty, the prosecutor put two questions which evoked testimony that the patient's mental condition had deteriorated following the incident with Bibby and that he had been moved from an unlocked unit in Medfield State Hospital to a locked unit. The defendant objected that the government's questions had gone beyond the subject of the direct questioning. The judge permitted McNulty to answer. What is permissible scope of cross-examination is within the sound discretion of the trial judge. *Commonwealth* v. *Greenberg*, 339 Mass. 557, 580-581 (1959). *Commonwealth* v. *Cresta*, 3 Mass. App. Ct. 560, 563 (1975). Generally, in Massachusetts, a party may cross-examine as to all aspects of the case. Liacos, Massachusetts Evidence § 3.2 (6th ed. 1994). The questions sought information which filled out the setting of the alleged crime and, in that manner, assisted the jury in believing or disbelieving the government's accusation

against the defendant. In exercising her discretion to allow the prosecution's questions, the judge acted within her authority.

4. *Improper closing argument by prosecutor.* In the course of her closing argument, the prosecutor urged upon the jury the idea that by reason of the patient's mental status, the crime charged was not a victimless one. For the assertion that the patient's circumstances within the hospital worsened after the incident with Bibby there was evidence and the prosecutor was on the verge, but not over the limits, of acceptable comments on the evidence. There was some risk that a jury might consider a crime of the sort described as trivial. When the prosecutor asked the jury "to remember the specter of [the patient] who is now virtually locked up without privileges . . . . I would ask you to remember the man who wasn't here to testify today," she crossed the line of propriety and the Commonwealth concedes as much. No specific objection was made by defense counsel to that remark, see *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 884 (1984), although defense counsel had objected when the prosecutor first commented on the subject of harm to the patient, and that objection had been overruled. In context, the "remember the specter" speech was within the scope of defense counsel's objection, and the gravity of the impropriety is open on appeal.

We consider what the prosecutor said about consequences to the patient in the context of the entire argument. *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978). *Commonwealth* v. *Achorn*, 25 Mass. App. Ct. 247, 250 (1988). The prosecutor's remarks did not go to the heart of the case, which was whether a cheap and vulgar proposition by Bibby had been made, accepted, and acted out; rather they dealt with a collateral question of consequences. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987); *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 755 (1986). Kept in perspective, the prosecutor's remark was not of a sort which would inflame the passion of a jury with normal ignition temperatures. We may assume a certain amount of common sense capacity by jurors to filter out overstatement, *Commonwealth* v. *Kozec*, *supra* at 517, and cases cited, and conclude that the portion of the prosecutor's closing which we have been discussing does not require reversal of the judgment.

5. *Severity of the sentence.* The judge sentenced the defendant to one year in a house of correction.[3] That is within the limit, albeit at the upper end, prescribed by G. L. c. 272, § 53A. It is not the function of an appellate court to review an otherwise lawful sentence which is within the limits set by the statute. *Commonwealth* v. *Franks*, 365 Mass. 74, 81 (1974). *Commonwealth* v. *Repoza*, 28 Mass. App. Ct. 321, 330 (1990).

6. *Constitutionality of G. L. c. 272, § 53A.* On appeal the defendant makes a half-hearted attack on G. L. c. 272, § 53A, as "unconstitutionally vague, overbroad, and ambiguous" in proscribing the solicitation, ac-

---

[3] A single justice of this court stayed execution of the sentence pending appeal.

ceptance, or payment of a fee to purchase "sexual conduct." We do not consider on appeal an issue which has not been put to the trial judge. *Commonwealth* v. *Dockham*, 405 Mass. 618, 632-633 (1989). *Commonwealth* v. *Rondeau*, 27 Mass. App. Ct. 55, 62-63 (1989). In any event, there is no mystery that fondling a woman's breasts is sexual conduct. *Commonwealth* v. *De La Cruz*, 15 Mass. App. Ct. 52, 58-59 (1982). *Commonwealth* v. *Mosby*, 30 Mass. App. Ct. 181, 184-185 (1991). There is nothing vague, overbroad, or ambiguous about the statute as applied. See *Commonwealth* v. *Jarrett*, 359 Mass. 491, 497 (1971).

7. *Denial of the motion for a new trial.* About fourteen months after her conviction, the defendant moved for a new trial on the basis of statements by a former security officer at Medfield State Hospital and a security officer employed there at the time of the motion. The trial judge held an evidentiary hearing, on the basis of which she made careful findings and denied the motion for a new trial.

In her appeal from that denial, the defendant first argues that Officer Plesh was exposed as a "shameless perjurer" and that, therefore, a new trial is mandatory. The trial judge expressly, however, found the testimony purporting to show Plesh's untruthfulness at the trial unconvincing. For that determination there is evidence in the record, to which the judge has specifically referred. See *Commonwealth* v. *Gagliardi*, 21 Mass. App. Ct. 439, 449 (1986).

The second ground urged for a new trial is that the defendant produced evidence that Plesh had a reputation as a liar. The judge could reasonably conclude that the reputation evidence, whose purpose was to impeach, was neither powerful nor genuinely new. See *Commonwealth* v. *Ortiz*, 393 Mass. 523, 537-538 (1984); *Commonwealth* v. *Grace*, 397 Mass. 303, 305-306 (1986). A similar weakness pertains to the third item of evidence offered as a basis of a new trial, that Plesh thought of himself as a "supercop." If true, this hardly undercut in any fundamental way Plesh's trial testimony.

Disposition of a motion for a new trial will not be reversed by an appellate court unless the motion judge's action is manifestly unjust, *Commonwealth* v. *Moore*, 408 Mass. 117, 125 (1990), particularly when the motion judge was also the trial judge and, therefore, had an opportunity to size up the witnesses and the evidence produced at the trial. *Ibid. Commonwealth* v. *Markham*, 10 Mass. App. Ct. 651, 652 (1980). *Commonwealth* v. *Leavitt*, 21 Mass. App. Ct. 84, 85 (1985). The judge acted conscientiously and carefully in considering the motion for a new trial, and we see no cause to alter her disposition.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

*Dennis M. Powers* for the defendant.

*Robert C. Cosgrove,* Assistant District Attorney, for the Commonwealth.