COMMONWEALTH vs. JOSEPH O'BRIEN.

No. 92-P-1843.

Norfolk. October 20, 1993. - January 25, 1994.

Present: ARMSTRONG, KAPLAN, & LAURENCE, JJ.

*Rape. Witness*, Child, Competency, Expert. *Practice, Criminal*, Agreement between prosecutor and defendant. *Evidence*, Expert opinion, Relevancy and materiality. *Child Abuse*.

At the trial of indictments for sexual offenses upon a four year old child, the judge made adequate inquiry with respect to the child's competency and properly declined to ask additional questions proposed by the defendant. [828-829]

Where the defendant in a criminal case did not demonstrate that he reasonably relied to his detriment on an assistant district attorney's oral agreement to prosecute in the District Court rather than to seek indictments for more serious crimes, the judge correctly denied the defendant's motion to dismiss the indictments that were obtained allegedly in breach of the agreement. [829-831]

At the trial of indictments, for sexual offenses, no error appeared in the judge's rulings on or receipt in evidence of the expert testimony of the psychotherapist who treated the four year old victim, with respect to the characteristics of sexually abused children. [832-834]

At the trial of indictments for sexual offenses upon a four year old child, evidence proffered by the defendant to explain any sophistication about sexual matters displayed by the child ahead of her age was properly excluded as too remote. [834-835]

INDICTMENTS found and returned in the Superior Court Department on January 22, 1992.

A motion to dismiss was heard by *David M. Roseman*, J., and the cases were tried before him.

*Theodore A. Barone* for the defendant.

*Ariane D. Vuono*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J. We affirm the convictions of the defendant Joseph O'Brien of the crimes of rape of a child under the age of sixteen by unnatural sexual intercourse (G. L. c. 265,

§ 23) and indecent assault and battery on a child under the age of fourteen (G. L.c. 265, § 13B), committed upon his daughter Vera (a pseudonym), about four years old at the time of the abuse and six years old at the time of trial.[1]

The defendant and Deborah Key were married and the child Vera was born to them in April, 1986. They were separated in July, 1988, and divorced in July, 1989. After the separation, the defendant went to live with his parents. The defendant initially was given unsupervised visitation rights. As the result of concern over the defendant's hitting Vera, rights were later modified so that visitations were to occur on Saturdays at the home of the defendant's parents under the supervision of the defendant's mother, Dorothy O'Brien. In late March, 1990, when Vera's mother apprehended that the defendant had physically abused the child by grabbing her by the crotch, she refused to allow further visitation.

On May 7, 1990, the child began in talk with her mother to tell of repeated instances of sexual abuse by the defendant in the Saturday encounters at grandmother O'Brien's house: she said the defendant put his fingers in her pee-pee (vagina) and had her touch his penis. This disclosure by the child led in time to the instant prosecution. At trial there was testimony on the part of the Commonwealth by the child, the mother, a psychotherapist, and the child's maternal grandmother about the accusation and the child's subsequent behavior. For the defense, O'Brien relatives were called to testify that the defendant lacked opportunity at the Saturday visits to be alone with the child. There was testimony by a physician about the child's physical condition, and testimony by the defendant himself. On appeal, the defense does not argue that, on the evidence adduced, motions for a required finding of not guilty should have been allowed. We must deal, however, with particular claims of error as follows:

1. *Child's competency.* At the voir dire concerned with the competency of the child to give testimony, the judge asked most of the questions on a list agreed between the prosecu-

---

[1]A second set of indictments for the same offenses was dismissed.

tion and the defense, but declined to ask additional questions proposed by the defendant. In our view, the questions that were put comprised an adequate inquiry into the cognitive capacity of the child and her understanding of the difference between truth and falsehood. The judge was faithful to *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 329-330 (1986), and *Commonwealth* v. *LeFave*, 407 Mass. 927, 941-942 (1990), defining the matters to be considered in adjudging competency. The defendant's proposed questions tended to go beyond competency and to touch on specific issues of the child's credibility and were better avoided. It may be added that the child's performance at voir dire and at trial was that of a competent witness.

2. *Agreement between prosecution and defense.* In August, 1991, before any charges had been brought against the defendant, his counsel spoke with the assistant district attorney assigned to the matter and the result was an oral agreement. The terms are set out in an affidavit of defense counsel, conceded by the Commonwealth to be accurate. It reads: "In mid August, 1991, I spoke with Assistant District Attorney Jill Okun. She was the prosecutor handling this case. At that time she agreed to bring this case in the District Court with a charge of Indecent Assault and Battery. The defendant agreed not to request a clerk magistrate's hearing[2] and to waive an initial bench trial on the matter." Arraignment in the District Court was originally set for August 12, 1991, but was continued "for a few weeks" without a specified date. It does not appear that there was any further communication between the attorneys. On January 22, 1992, the defendant was indicted on the charges of rape and indecent assault and battery. The case was now in the hands of a special prosecutor brought in to replace Ms. Okun. After entry of not guilty pleas in Superior Court, the defendant moved on April 22,

---

[2]The defendant was not entitled by law to a clerk-magistrate's hearing (as a prerequisite to the issuance of a complaint). That procedure applies to misdemeanors, not to felonies. See Smith, Criminal Practice and Procedure §§ 629-632 (2d ed. 1983). The crime of indecent assault and battery on a child under the age of fourteen (G. L. c. 265, § 13B) is a felony. See note 4, *infra.*

1992, to dismiss the rape indictments on the ground that they were secured in breach of the agreement. The motion was heard on May 6, 1992, and denied with memorandum on the first day of trial, June 1, 1992.

We may assume in the defendant's favor, although the point is not clear, that the agreement meant that the "case" would be limited to indecent assault and battery, a stiffer charge of rape being excluded, and that trial of the assault would occur in District Court. So far as the child, as complainant, would thus avoid being exposed to testifying at a bench trial ahead of likely trial to a jury, one can see some possible tactical advantage to the prosecution, and also some psychological relief to the child.

However all this may be, the defense could argue in support of its motion that, as the Commonwealth had made a deliberate promise as part of a transaction with the defendant, it should simply be held to it. This straightout view has been pressed but was rejected in *Commonwealth* v. *Smith*, 384 Mass. 519, 522 (1981), and the law rather is that, with an exception for extraordinary situations,[3] enforcement of such a promise will be granted only when the defense reasonably relied on it to its detriment. See *Blaikie* v. *District Attorney for the Suffolk Dist.*, 375 Mass. 613, 618 (1978); *Commonwealth* v. *Tirrell*, 382 Mass. 502, 511-512 (1981); *Commonwealth* v. *Spann*, 383 Mass. 142, 145 (1981); *Commonwealth* v. *Smith*, 384 Mass. at 522; *Doe* v. *District Attorney for the Plymouth Dist.*, 29 Mass. App. Ct. 671, 673 (1991). Cf. *Commonwealth* v. *Santiago*, 394 Mass. 25, 30 (1985). This rule may be thought to afford some protection against the possibility of improvident (or corrupt) dealings between prosecutors and prospective defendants.[4]

---

[3]The court has stated that even when no contract existed, it would enforce a prosecutor's promise if required to vindicate principles of fairness encompassed in the notion of due process of law. *Commonwealth* v. *Smith*, 384 Mass. at 521-522.

[4]We mean no criticism here, but it remains the case that, in the event of conviction in District Court of indecent assault and battery, that court in the exercise of concurrent jurisdiction could impose a sentence of no more than commitment to a house of correction for two and a half years, see

Commonwealth *v.* O'Brien.

The required reliance does not, of course, consist merely in the defeat of a hope or expectation that the prosecution will honor the promise; typically the question rather is whether the defense was materially embarrassed by the promise or its breach in defending against the ultimate charges. The defense argues that, in reliance at least on the spirit of the agreement which, it says, looked to avoiding undue strain on the child, it forbore deposing her until the formal period for taking depositions expired in a connected civil action brought by the child's mother as her next friend against the defendant and grandmother Dorothy O'Brien.[5] The agreement said nothing about any civil action or any civil deposition. As the judge remarked, there was no showing that the prosecutor's promise regarding the assault and battery charge in fact influenced the course taken in the civil action, to which we may add that the defense, learning of the indictment, did not attempt to get an extension of time for a deposition, nor did it try to explain why it did not. Equally untenable is the claim that there was reliance and detriment in that the defense by reason of the agreement gave up the opportunity for a bench trial. The proceeding in District Court was wholly aborted, and bench trial or not became irrelevant; indictment followed the usual track.

3. *Testimony of psychotherapist.* Interrogation of the child at trial brought out that she had delayed making a complaint (visits to the O'Briens ended on March 31; she spoke on May 7), that she later recanted and for a considerable time said the defendant had hit her but had not touched her sexually, and that still later she reaffirmed her complaint, now saying that her recantation was false. The mother also testified to the child's changes of direction. In cross-examination of these

G. L. c. 218, §§ 26 & 27, c. 265, § 13B. The sentences imposed here after trial were: for the rape, imprisonment at Massachusetts Correctional Institution (MCI), Cedar Junction, for not less than six nor more than ten years; for the indecent assault and battery, ten years, from and after, at MCI, Concord, suspended, with probation after release.

[5]Damages were sought against the defendant for his abuse of the child and against the grandmother for failing in her duty to supervise the Saturday visits.

witnesses the defense attempted to put the child's basic veracity in question because of her vacillation and inconsistent statements.

The next step for the prosecution was to call Jade McGleughlin, a psychotherapist at Children's Hospital in Boston who was licensed as an independent clinical social worker and had considerable experience with cases of claimed sexual abuse of children. The child in the present case was brought to the hospital on May 7; the psychotherapist held three "evaluation" sessions with the child in successive weeks and thereafter served as the child's therapist in many weekly meetings.

Upon voir dire, the judge found that McGleughlin was qualified to testify as an expert (the finding is not disputed on this appeal). She proposed to give expert testimony — to quote from Commonwealth v. Dockham, 405 Mass. 618, 627, 628 (1989) — on "the general behavioral characteristics of sexually abused children," which would include testimony "that sexually abused children often delay disclosure of sexual abuse or make gradual disclosures, retract their statements, and repress the abuse," and that they exhibit certain other distinctive signs and symptoms. The psychotherapist also intended to testify that the child made "fresh complaint" to her at their early meetings· about the defendant's abusive conduct. There was no doubt about the admissibility of her evidence on both these matters.

In offering an expert who would testify about the "general characteristics," the Commonwealth must take care not to lead the expert to trespass unduly on the jury's province to assess the credibility of witnesses, in particular the child as witness. Therefore the Dockham case, 405 Mass. at 628, advises the prosecution to steer the expert clear of the question of the truthfulness of the particular child and in that connection to avoid involvement in the question whether the particular child was in fact abused or whether her behavior did or did not in fact conform to the "general characteristics."[6]

---

[6]There are cases where the proffered expert testimony itself approaches so closely the credibility of the alleged victim that it is best excluded. In

Faithful to *Dockham*, the judge made the prophylactic rul-
ing that the prosecution should limit the expert's testimony
as indicated. The psychotherapist's direct testimony was so
limited; indeed even her testimony about fresh complaint was
confined to a bare statement.[7]

The defense conducted a strong cross-examination of the
psychotherapist. Counsel inquired into the witness's profes-
sional position and experience. He probed in some detail the
more vulnerable aspects of the theory of a behavior pattern.
The psychotherapist agreed that abuse might be absent even
when a child behaved conformably with the general charac-
teristics, that recantation might occur for the simple reason
that there had been no abuse, and so on. Further, the psycho-
therapist agreed that she was speaking to the nature of the
syndrome and was not to be taken as giving an opinion on
whether the child in the present case was credible or had suf-
fered abuse.

Not content with cross-examination on these matters, de-
fense counsel began to question the psychotherapist about
her meetings with the child (he used copies of her notes as a
basis for his examination). At the same time he was sug-
gesting (among other themes exculpatory of his client) that

---

*Commonwealth* v. *Ianello*, 401 Mass. 197, 201-202 (1987), the defense
expert intended to testify that, as an exception to the alleged generality
that sexually abused children rarely make things up, those involved in cus-
tody disputes (as in the instant case) do lie. The trial judge was justified in
excluding the testimony: "[T]he proffered opinion was no more than the
expert's over-all impression of the truthfulness of members of a class (chil-
dren in custody disputes) of which the specific complainant was a member.
While the proposed testimony fell short of rendering an opinion on the
credibility of the specific child before the court, we see little difference in
the final result. . . . If the testimony had erroneously been allowed, [the
expert] would have impermissibly intruded upon the vital function of the
jury." In *Commonwealth* v. *Montanino*, 409 Mass. 500, 502-504 (1991),
the trial judge erred in allowing a police officer with experience in sexual
abuse cases to testify for the prosecution that " 'most' victims eventually
provided more details regarding the assault than they initially revealed,"
for "[w]e think there is little doubt that [the officer's] comments relating
to the credibility of 'most' sexual assault victims would be taken by the
jury as [the officer's] endorsement of [the victim's] credibility."

[7]The judge charged fully and correctly on fresh complaint before the
relevant testimony came in.

the child had been coached, in effect, by the mother who discussed with the psychotherapist, and the child as well, what the child was saying or doing in play at the therapy sessions.[8] The judge noted that this was a choice of tactic by the defense: it had chosen not to stop with the cross-examination of child and mother on the point but had gone to some extent beyond the range allowed to the prosecution and in cross-examination of the psychotherapist had inquired into the child's behavior following the accusation. The defense had opened the door and must abide the consequence that the prosecution could later, on redirect, put questions in the same field, which it did briefly. Finally, the judge charged the jury carefully on the function of expert testimony and on the sole responsibility of the jury as finders of the facts. Here the judge charged in the terms of the instructions given by the trial judge in the *Dockham* case, 405 Mass. at 629.

The defense now says that to preserve clear lines, the prosecution should have brought in an expert other than one who served as therapist to the child to testify about the syndrome.[9] That arrangement might have advantages, but on the whole record we are satisfied the jury could find their way and the defendant was well defended and fairly tried.

4. *Pornographic videotapes.* The defendant offered evidence that the child's uncle (her mother's brother) kept in his apartment a large number of pornographic videotapes, and that at one time the defendant had borrowed one of those videotapes and shown it in his house (to the apparent discomfort of the mother). The evidence was tendered to suggest that any sophistication about sexual matters displayed by the child ahead of her age could be explained by her seeing the tapes at the uncle's home, rather than by reason of her alleged sexual encounters with the defendant. On voir dire it appeared that the child sometimes slept overnight at

---

[8] In cross-examining the mother earlier in the trial, defense counsel suggested that she instigated the prosecution out of bad feelings toward the defendant and the O'Brien family and conflict about support payments.

[9] We do not find that the defense recorded so broad an objection at the trial, but in any case we think the judge committed no error in conducting the trial in his sound discretion as above described.

the uncle's place. This was so remote from proving exposure of the child to pornography that the judge was right to exclude the proffered evidence.

*Judgments affirmed.*